**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GUL-E-RANA MIRZA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 06-cv-6484 |
| | ) | |
| THE NEIMAN MARCUS GROUP, INC., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of Plaintiff, Gul-E-Rana Mirza's ("Mirza") complaint [1, 12] brought against Defendant, Neiman Marcus Group, Inc. ("Neiman Marcus"). The complaint alleges that Defendant engaged in discrimination based on color, national origin, race, and religion. The complaint further alleges that Defendant terminated Plaintiff's employment, failed reasonably to accommodate her religion, failed to stop harassment, and retaliated against Plaintiff for asserting protected rights, all in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII" or "the Act").[1] Currently before the Court is Defendant's motion for summary judgment [43]. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I.     Procedural Background**

Prior to initiating the instant action, Mirza filed a charge of discrimination with the Equal Opportunity Commission ("EEOC") on December 6, 2004, checking the appropriate boxes for alleging discrimination based on religion and on national origin. She was issued a final decision and right to sue letter from the EEOC [10] on August 22, 2006. Precisely when she received that

---

[1] Plaintiff's form complaint contains checked boxes which indicate that her lawsuit was brought pursuant to both Title VII and 42 U.S.C. § 1981, but the parties have litigated the case as if only Title VII applies.

letter is open to some debate (whose conclusion will be reached at the next status hearing). Plaintiff filed her complaint in federal court *pro se*, but Judge Shadur, to whom the case initially was assigned, appointed counsel to represent Plaintiff [11].

Neiman Marcus's answer [16] denies that it discriminated against Plaintiff and contends that "[a]ll employment actions taken towards Plaintiff by Defendant were based on legitimate, non-discriminatory reasons." Answer at 6.

## II. Factual Background

The Court takes the relevant facts primarily from the parties' respective Local Rule ("L.R.") 56.1 statements of material fact: Defendant's Statement of Facts ("Def. SOF") [45], Plaintiff's Response to Defendant's Statement of Facts ("Pl. Resp. Def. SOF") [51], Plaintiff's Statement of Additional Facts ("Pl. SOAF") [51], and Defendant's Response to Plaintiff's Statement of Additional Facts ("Def. Resp. Pl. SOAF") [53].[2] Both parties constructed their fact statements as capsule summaries of the deposition testimony rather than undisputed facts about the events that led to Plaintiff's lawsuit. Where Defendant's fact statements merely describe

---

[2] L.R. 56.1 requires that statements of fact contain allegations of material fact, and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. at 583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider the statement. See, *e.g.*, *Malec*, 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. See L.R. 56.1(a), (b)(3)(B); see also *Malec*, 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317). Because Mirza did not provide any response to paragraphs one through five of Defendant's Statement of Facts, those paragraphs are deemed admitted. L.R. 56.1(b)(3); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

Plaintiff's deposition testimony, the Court construes that deposition testimony as undisputed fact (at least in the absence of contradictory fact statements). *Cf. Saxton v. AT&T*, 10 F.3d 526, 528 n.2 (7th Cir. 1993) (construing statement of facts using the word "alleged" as undisputed facts).

Plaintiff is a Muslim woman of Pakistani descent, who worked at a Neiman Marcus store in Oak Brook, Illinois. (Def. SOF ¶¶ 1-2.) Plaintiff worked as a sales associate in the Intimate Apparel department from June 30, 2003, to May 14, 2004. (Pl. Dep. at 16.) The record evidence indicates that Plaintiff was the only Pakistani and the only Muslim employee in the department.[3] (Pl. SOAF ¶ 49.) Plaintiff's complaint is that, during her employment, she was subject to discrimination in a variety of ways, including that: (i) Plaintiff's supervisor granted preferential treatment to Plaintiff's colleagues while threatening Plaintiff with firing and otherwise giving Plaintiff poor work assignments (see, *e.g.*, Def. SOF ¶¶ 9-10, 15-20; Pl. SOAF ¶¶ 61-64, 67-69); (ii) Plaintiff's supervisor refused requests by Plaintiff for days off for religious holidays (Def. SOF ¶¶ 15-20); (iii) Plaintiff's supervisor failed adequately to respond to complaints that Plaintiff's co-workers engaged in "sale stealing," physically threatening behavior, and the use of racial epithets (Def. SOF ¶¶ 11, 13; Pl. SOAF ¶¶ 74-76, 78-79); (iv) Plaintiff was excluded from office social functions (Def. SOF ¶¶ 23-25); and (v) Plaintiff was subject to a hostile workplace environment (Def. SOF ¶ 30-31; Pl. SOAF ¶¶ 74-76). These complaints are discussed in greater detail below and, for the sake of clarity, are sorted by the relevant actors involved.

---

[3] Plaintiff describes her co-workers as white (Pl. SOAF ¶ 49). Defendant points to record evidence that describes some of the other staff as Greek, Serbian, and German (Buchanan Dep. at 126), but that deponent did not recall having worked with other Pakistanis or associates of Middle Eastern descent and could not say whether or not there were other Muslims. "I had – I had a Chinese girl * * * I don't know what the lady was." *Id.* Based on the legal framework and the issues pending on summary judgment, the parties' side dispute is of little importance.

## A. Discriminatory Acts by Plaintiff's Supervisor[4]

Plaintiff alleges that her supervisor, Sylvia Buchanan, granted preferential treatment to Plaintiff's colleagues. According to Plaintiff, when the sales floor was busy and understaffed, Buchanan helped Plaintiff's co-workers (and rang up sales under their IDs), but Buchanan did not similarly assist Plaintiff.[5] (Pl. Dep. at 113-14.) Plaintiff testified that Buchanan also did not invite Plaintiff to an office holiday party in January 2004, although the record evidence is not entirely harmonious as to whether Plaintiff was invited and/or disinvited. (Compare Pl. Dep. at 126-32, with Def. SOF ¶ 23-25.) Around that time, before Christmas of 2003, Plaintiff was not invited to a party organized by Plaintiff's co-workers that included Buchanan, despite having been asked to help pay for a gift for Buchanan. (Pl. Dep. at 134-36.)

Plaintiff also testified that Buchanan singled her out in more affirmative ways. Buchanan repeatedly told her to begin looking for another job, on at least one occasion relaying the message through Mirza's daughter. (Pl. Dep. at 166-68 (relayed message); Pl. SOAF ¶ 51.) Plaintiff says that this happened "repeatedly" and lists May 14, 2004, specifically (Pl. Dep. at 166-68).[6] On May 14, 2004, Buchanan called Plaintiff to complain that Plaintiff left early (whether the departure was in fact early is itself a disputed proposition). (Pl. Dep. at 182.) Buchanan also called Plaintiff a "bitch" and stated that she (Plaintiff) was "bitching" about her schedule. (Pl. Dep. at 181-82; Def. SOF ¶ 21.) The statements by Buchanan that Plaintiff was "bitching" occurred between November 25, 2003, and February 1, 2004. *Id.* According to Plaintiff, Buchanan also forced Plaintiff to work the register in the "very back of the department"

---

[4] The Court refers to Buchanan as a supervisor because both parties do so in their filings. The Court makes no findings as to Buchanan's status for purposes of imputing liability to Defendant.

[5] Buchanan denies this and says that she would assist any of the employees. (Buchanan Dep. at 140-41.)

[6] Plaintiff also claims that Buchanan told her to look for another job on February 27, 2004, but her fact statement does not cite to supportive record evidence. (See Pl. SOAF ¶ 51.)

rather than the one in the front of the department (Pl. Dep. at 182-83), gave disputed sales to co-workers (Pl. Dep. at 184), forced Plaintiff to work the stock room during busy times and sales (Pl. Dep. at 185), did not regularly schedule Plaintiff to work on Saturdays (Pl. SOAF ¶ 59),[7] forced Plaintiff to take breaks at the beginning of her shift (Pl. SOAF ¶ 60), directed Plaintiff to leave before her scheduled shift was over on March 30, 2004 (Pl. SOAF ¶ 62), reduced Plaintiffs hours starting in April 2004, when a new employee began working in the department (Pl. SOAF ¶ 65),[8] refused to give time off for Plaintiff to schedule a biopsy (Pl. Dep. at 186-87), refused to sign off on a monetary award that Plaintiff had won for selling a specified amount of a vendor's merchandise in April or May of 2004 (Pl. Dep. at 190-91), refused to give Plaintiff a day off for a religious holiday in November 2003 (Def. SOF. ¶ 16), changed Plaintiff's work schedule without telling her (Pl. Dep. at 183), and played a part in preventing Plaintiff from applying for an assistant manager position in early 2004 (Pl. Dep. at 192-95).[9] According to Plaintiff, she was the "only one who was [of] different color, different origin" and she was the only one treated in the manner described above. (Pl. Dep. at 196-97; Pl. SOAF ¶ 58.)

However, Plaintiff does concede that Buchanan never made any comment referencing Mirza's religion or national origin. (Def. SOF ¶ 31.) Likewise, Plaintiff concedes that she never complained to Human Resources that she had been treated differently by Buchanan based on

---

[7] Defendant disputes Plaintiff's fact statement by stating that Plaintiff was scheduled to work 17 Saturdays between July 2003 and May 2004. (Def. Resp. Pl. SOAF ¶ 59.) There were, by the Court's count, forty-five Saturdays between July 2003 and Plaintiff's departure in May 2004. For purposes of the motion for summary judgment, the Court need not determine whether a thirty-eight percent Saturday work rate is "regular."

[8] The parties dispute whether Plaintiff's hours were reduced. (Compare Pl. Dep. at 165 (plaintiff's hours reduced), with Buchanan Dep. at 94 (plaintiff's hours merely altered).)

[9] There is conflicting evidence as to the reasons Plaintiff was told she could not apply for the position (see Def. Resp. Pl. SOAF ¶ 55), but that evidence is not material to Defendant's motion for summary judgment.

religion or ethnicity, that Gardner used an ethnic slur, or that Plaintiff was denied an accommodation for a religious holiday. (Def. SOF ¶¶ 43-45.)

**B.     Judy Gardner, Pat Vlahos, and Jennifer Blanchett**

Plaintiff and Judy Gardner did not get on well. The two worked together from July 2003 through April 6, 2004. (Pl. SOAF ¶ 74.) The two had "regular disagreements over ringing sales" and had an "on-going personality dispute." (Def. SOF ¶ 12.) On two occasions, between September and November 2003, Gardner allegedly called Plaintiff a "Paki" and/or a "Paki piece of shit." (Pl. Dep. at 89, 97.) Plaintiff testified that she informed Buchanan about Gardner's language – and that Plaintiff felt physically threatened by Gardner – but that she did not know what if any actions Buchanan took in response to her complaint. (Pl. Dep. at 92, 100-101.) The abusive language and physically threatening behavior occurred in 2003. *Id.* Plaintiff testified about other behavior by Gardner as well: that she would push Plaintiff out of the way (Pl. SOAF ¶ 75), refer to Plaintiff as "garbage" in front of customers (*id.*), and even "throw things" at Plaintiff (Pl. SOAF ¶ 76; Pl. Dep. at 84). And although the record indicates that Gardner did not make additional remarks about Plaintiff's ethnicity after Plaintiff complained to Buchanan (Def. SOF ¶ 14), Defendant has not pointed to record evidence indicating that other allegedly harassing behavior ceased at that time. Indeed, when disputes cropped up, Plaintiff testified that she was essentially told to grin and bear it. (Pl. SOAF ¶ 78.)

There were other incidents involving co-workers as well. Plaintiff testified that both Gardner, and a second employee, Pat Vlahos, would steal sales from Plaintiff. (Pl. SOAF ¶ 74-75.) Vlahos worked with Plaintiff from July 2003 through May 14, 2004; in the main, Plaintiff experienced less friction with Vlahos than she did with Gardner. (Pl. SOAF ¶ 74; Pl. Dep. at 85-

86.)  Defendant's summary judgment motion does not address the acts allegedly committed by Vlahos.

Finally, Plaintiff alleges that she was discriminated against when she was told that she could not apply for an assistant manager position.  Jennifer Blanchett, an employee in the human resources department, told Plaintiff that she could not apply for an assistant manager position in early 2004 because Plaintiff had "a bumpy start."  (Pl. SOAF ¶ 55; Pl. Dep. at 192-93.)  Again, Defendant's summary judgment motion does not address this incident.

### C.  Plaintiff's Last Day of Work and EEOC Charge

Plaintiff's last day of work was May 14, 2004.  (Def. SOF ¶ 6; *id.* at Ex. 7; Pl. Resp. Def. SOF ¶ 1; Pl. Dep. at 16.).  On that day she was scheduled to work from 9:00 a.m. to 6:00 p.m. She did not receive a break or eat lunch so Plaintiff asked to leave one hour early (Pl. SOAF ¶ 67), which Buchanan indicated would not be a problem (Pl. Dep. at 167).  Plaintiff testified that, although she left in accordance with normal practice (*id.* at 168), Buchanan called Plaintiff's home and was "upset" about Plaintiff's early departure (*id.*).

Mirza did not return to work, and she filed a charge of discrimination with the EEOC on December 6, 2004, some 206 days after her employment with Neiman Marcus concluded.  (Def. SOF ¶ 47; *id.* at Ex. 11; Pl. Resp. Def. SOAF ¶¶ 42-43.)  On the charge form, Plaintiff checked boxes indicating discrimination for "national origin" and "religion."  (Def. SOF ¶ 51.)  Plaintiff never filed a complaint with the Illinois Department of Human Resources.  (Def. SOF. ¶ 49; *id.* at Ex. 12; Pl. Resp. Def. SOF. ¶ 44.)  Plaintiff's complaint [1] alleges discrimination based on color, national origin, race, and religion.  The complaint further alleges that Defendant terminated Plaintiff's employment, failed reasonably to accommodate her religion, failed to stop harassment, and retaliated against Plaintiff for asserting protected rights.

## III.    Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

There is no heightened standard for summary judgment in employment discrimination cases, nor is there a separate rule of civil procedure governing summary judgment in

employment cases. *Alexander v. Wisc. Dept. of Health and Family Svcs.*, 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases, and in such cases summary judgment is not appropriate. See *id.* Nevertheless, summary judgment in favor of the defendant is hardly unknown, or for that matter rare, in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

## IV.    Analysis

### A.    Title VII, in General

Title VII prohibits discrimination in employment: "It shall be an unlawful employment practice for an employer * * * to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prove a case of discrimination under Title VII, a plaintiff may show discrimination under either the "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008) (explaining the misleading nature of this nomenclature and reexplaining that the direct method may be proven with either direct or circumstantial evidence and that the indirect method proceeds under the burden-shifting rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)). Under the direct method of proof, the plaintiff may introduce either direct or circumstantial evidence[10] to create a triable issue as to whether the adverse employment action was motivated by a discriminatory intent. *Id.*; see also *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005) (conceptualizing direct evidence as either a "smoking gun" or a "convincing mosaic"). In other words, the plaintiff must show either "an acknowledgement of discriminatory

---

[10] "Circumstantial evidence * * * may come in the form of suspicious timing, ambiguous statements oral or written, [or] behavior toward or comments directed at other employees in the protected group." *Dandy v. United Parcel Svc.*, 388 F.3d 263, 272 (7th Cir. 2004) (internal quotation marks and citation omitted).

intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Dandy v. United Parcel Svc., Inc.,* 388 F.3d 263, 272 (7th Cir. 2004) (quoting *Gorence v. Eagle Food Ctrs., Inc.,* 242 F.3d 759, 762 (7th Cir. 2001)).

Under the indirect method of proof initially set forth in *McDonnell Douglas Corp. v. Green*, a plaintiff first must establish a *prima facie* case of discrimination. 411 U.S. 792, 802-04 (1973). In order to establish a *prima facie* case of discrimination, a plaintiff must establish that: (1) he was a member of a protected class; (2) he was qualified for the job or was otherwise meeting the defendant's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably. See *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007).

If the plaintiff successfully establishes a *prima facie* case, a rebuttable inference of discrimination arises, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See *Essex v. United Parcel Svc., Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997); see also *Fane*, 480 F.3d at 538. Once the defendant provides a legitimate explanation, the burden then shifts back to the plaintiff to prove that the proffered justification is a mere pretext. *Fane*, 480 F.3d at 538. To establish pretext, the plaintiff must adduce specific facts which show either that the defendant was motivated by a discriminatory reason, or that the defendant's explanation is unworthy of credence – essentially, that the defendant's explanation is a lie. See *Zaccagnini v Charles Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003). The plaintiff can accomplish this by demonstrating that the proffered reason (1) has no basis in fact, (2) did not actually motivate the adverse employment action, or (3) is insufficient to motivate the adverse employment action. *Velasco v. Ill. Dept. of*

*Human Svcs.*, 246 F.3d 1010, 1017 (7th Cir. 2001); *Cliff v. Bd. of Sch. Commr's of City of Indianapolis*, 42 F.3d 403, 412 (7th Cir. 1994).

B.     **Statute of Limitations in Title VII Cases**

In Defendant's estimation, the legal framework sketched above does not bear on the resolution of this case because the Act's substantive guarantees are trumped by its temporal limitations.  In other words, Defendant says that Plaintiff's claims are time barred.  The Court is not persuaded, although Defendant's reply memorandum of law raises a limitations issue that, as discussed below, ultimately could lead to the dismissal of this action.

The key statutory limitations provision provides that

> [a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred * * * except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency * * * such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred * * *.

42 U.S.C. § 2000e-5(e)(1).  States that have the machinery and meet the requirements for handling claims under Title VII are referred to as "deferral states."  Once an individual files a charge with a deferral state, she must wait sixty days to file an EEOC charge unless the state proceeding is "earlier terminated."  42 U.S.C. § 2000e-5(c).  Finally, the Act authorizes the EEOC to enter into worksharing agreements (42 U.S.C. § 2000e-8(b)), which allow states and the EEOC to avoid duplicating one another's efforts.  *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 122 (1988).

Defendant argues that Plaintiff would have been entitled to the benefit of the 300 day limitations period in Section 2000e-5(e)(1) only if she first had filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR").  (Def. Mem. at 3-5.)  In support of its argument, Defendant cites a handful of authorities.  The first merits particular attention; in *Nat'l*

*R.R. Passenger Corp. v. Morgan*, the Supreme Court held that Title VII claims arising from discrete acts of discrimination must be brought within the appropriate 180- or 300-day limitations period, but that the period begins to run for hostile work environment claims only after the last act constituting the claim occurs. 536 U.S. 101, 105 (2002). That holding is not the key to Defendant's argument, however – instead, Defendant leans on the Court's general description of Section § 2000e-5(e)(1). In describing that limitations provision, the Court explained: "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee *who initially files a grievance with that agency* must file the charge with the EEOC within 300 days of the employment practice." *Id.* at 109 (emphasis added). That general description does indeed, at first glance, support Defendant's argument. Defendant similarly cites a handful of other cases from this circuit that appear to support its construction of the statute. For example, in *Tinner v. Schroeder*, a Seventh Circuit case dealing with an EEOC charge filed in Indiana, the court observed in dicta that "the parties assume in their briefs that 300 days is the proper time period, though 180 days may well be the correct timeframe if Tinner's only action was to file a charge with the EEOC." 308 F.3d 697, 707 n.7 (7th Cir. 2002). See also *Brown v. Ill. Dept. of Natural Res.*, 499 F.3d 675, 681 n.5 (7th Cir. 2007) (quoting *Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006)); *Casteel v. Executive Bd. of Local 703 of the Int'l Bhd. of Teamsters*, 272 F.3d 463, 466 (7th Cir. 2001); *Espinoza v. Immaculate Conception High Sch.*, 2005 WL 1498684, at * 2 (N.D. Ill. June 20, 2005) (holding that a plaintiff's claims were time barred where he did not file a timely complaint with the IDHR prior to filing his EEOC charge). The district court's unambiguous holding in *Espinoza* most clearly supports Defendant's argument.

Defendant's reliance on these authorities, although understandable, is ultimately misplaced. The general explication of the limitations period of Section 2000e-5(e)(1) in *Morgan* was well-suited for its purpose, but it did not seek to describe how a "proceeding[] with a State or local agency" is "initially instituted" (§ 2000e-5(e)(1)), nor did it describe what happens when someone fails to adhere to a *state*'s statutory filing period. Supreme Court and Seventh Circuit case law reveal the importance of both inquiries: the relevant holdings teach that an individual (i) can institute a state proceeding by filing her charge with the EEOC, even if (ii) the individual misses the state's filing deadline.

As to how a state complaint is instituted, the Supreme Court held in *Love v. Pullman Co.* that a charge initially filed with the EEOC, and then referred to a state agency, properly institutes proceedings for purposes of Section 2000e-5(e)(1). 404 U.S. 522, 525-26 (1972). (Here, the face of Plaintiff's EEOC charge indicates that it was filed with both the IDHR and the EEOC (see [45], Ex. 11), indicating that a proceeding was indeed instituted with the State of Illinois.) The Court took up the second question – the effect of missing the state-law limitations period on the EEOC charge – in *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 109-10 (1988). The petitioner in that case failed to file her discrimination charge with the appropriate state agency within the 180-day limitations period. Instead, 290 days after what she alleged was a discriminatory discharge, she filed a charge with the EEOC. Pursuant to a worksharing agreement with the State of Colorado, the EEOC forwarded the charge to the state agency. The communication "stated that the EEOC would initially process the charge, pursuant to the worksharing agreement between the EEOC and the [State agency]." *Id.* at 112-13. In arguing that Plaintiff's charge was time barred, the respondent argued that the plain language of Section 2000e-5(e) required a Plaintiff to make a *timely* filing with the state agency. *Id.* at 123. The

Court began its analysis by noting that seven of the Circuit Courts of Appeals – including the Seventh – had rejected the respondent's narrow construction of the statute. *Id.* & n.7 (collecting cases). The Court reasoned that Section 2000e-5(e) contains no requirement that a complaint with the appropriate State authority be timely filed under state law. And the Court declined to impose such a requirement, given the remedial purpose of Title VII and the "recognition that it is a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Id.* at 123-24 (internal quotation marks and citation omitted).

Decisions by the Seventh Circuit dictate that the same result obtain in this case, based on the worksharing agreement between the State of Illinois and the EEOC. In *Marlowe v. Bottarelli*, the plaintiff filed a charge of discrimination with both the IDHR and the EEOC 299 days after she was discharged by her employer. The Court explained that the worksharing agreement[11] between the IDHR and the EEOC vested either the IDHR or the EEOC with initial jurisdiction. *Marlowe v. Bottarelli*, 938 F.2d 807, 809 (7th Cir. 1991). In interpreting the meaning of the worksharing agreement, the Court concluded that it was the "obvious intent of the drafters * * * to effect state waiver of complaints untimely under state law and delegate initial jurisdiction over such complaints to the [EEOC]." *Id.* at 812. The Court held, therefore, that the filing that the plaintiff made with the IDHR was "erroneous" and that the only filing that mattered was the EEOC filing. *Id.* at 814 (explaining that the worksharing agreement "appears to be self-executing – no discretionary action on the part of the IDHR's agent in the EEOC need be taken to effectuate the waiver provisions of the agreement"). In essence, the plaintiff's charge with the EEOC simultaneously initiated and terminated the state proceedings (*id.*), satisfying the statutory prerequisites for obtaining the benefit of the 300 day limitations period provided in

---

[11] The details of the agreement are discussed in some detail in *Sofferin v. Am. Airlines, Inc.*, 923 F.2d 552 (7th Cir. 1991).

Section 2000e-5(e)(1). In this case, state law required Plaintiff to file her claim with the IDHR within 180-days of the alleged acts of discrimination. 775 ILCS 5/7A-102(A). Plaintiff did not file her EEOC charge until 206 days after her employment with Defendant concluded. Therefore, *Marlowe*'s holding is squarely on point.

Consistent with *Marlowe*, and notwithstanding a few cases which Defendant understandably (though erroneously) relies upon, there is a veritable avalanche of cases in which courts have stated that the relevant time period for filling an EEOC charge in Illinois is 300 days, often not even mentioning any separate IDHR filing requirement. See, *e.g.*, *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1121 n.4 (7th Cir. 2009) ("In Illinois, a complainant must file a charge with the EEOC within 300 days of the alleged discriminatory act and failure to do so renders the charge untimely."); *Lewis v. City of Chicago*, 528 F.3d 488, 490 (7th Cir. 2008) (relevant period for filling EEOC charge was 300 days; no mention of an IDHR filing requirement); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008) (same); *Roney v. Ill. Dept. of Transp.*, 474 F.3d 455, 459-60 (7th Cir. 2007) (same); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (same); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 724 (7th Cir. 2004) (same; "[a]pplying * * * *Morgan*"). And so forth. The Court is unaware of any authority that directly calls *Marlowe* into question.

Defendant argues that, even if the foregoing is correct, the dicta in the Seventh Circuit cases that it cites, along with the "pronouncement" in *Morgan*, overrule *Marlowe*. (Def. Mem. at 4.) The Court concludes that Defendant reads these cases for more than they are worth, particularly given that the Court in *Morgan* did not raise doubts about the continued viability of *Commercial Office Products* or *Love v. Pullman Co.* In fact, the general description of Section 2000e-5(e)(1) in *Morgan* is roughly the same as the description that the Court gave in

*Commercial Office Products* – the latter of whose liberal construction, Defendant argues, the former supposedly reined in. Compare *Morgan*, 536 U.S. at 110 (300 days for employee "who initially files a grievance" with the state agency), with *Commercial Office Products*, 486 U.S. at 110 ("If a complainant initially institutes proceedings with a state or local agency with authority to grant or seek relief from the practice charged, the time limit for filling with the EEOC is extended to 300 days."). Mindful of the appropriate role of district courts within the Article III framework, the Court declines Defendant's invitation to conclude that multiple Seventh Circuit and Supreme Court precedents have been overruled *sub silentio*. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is [the Supreme Court's] prerogative alone to overrule one of its precedents.").

In summary, and in accordance with Supreme Court and Seventh Circuit holdings in this realm, each discrete act of alleged discrimination by Neiman Marcus against Plaintiff started a 300-day limitations period for Plaintiff in which to file a charge with the EEOC. *Morgan*, 536 U.S. at 113; see also 29 C.F.R. § 1601.13(a)(4)(ii). Because Plaintiff filed her EEOC charge on December 6, 2004, any act that occurred prior to February 10, 2004, is time barred. Those acts may still be used, however, as "evidence in support of a timely claim." *Morgan*, 536 U.S. at 113. The 300-day limitations period for Plaintiff's hostile work environment claim, discussed below, began to run after the occurrence of the last act that contributes to the claim. *Id.* at 117.

Although Plaintiff's charge satisfied Section 2000e-5(e)(1), Defendant's reply memorandum of law notes another potential limitations problem. Once an individual receives a right to sue letter from the EEOC she must initiate her lawsuit within ninety days. 42 U.S.C. § 2000e-5(f)(1). Defendant points out that, in Plaintiff's memorandum of law, Plaintiff states that she received her right to sue letter on August 28, 2006 "and she subsequently filed a discrimination complaint in Federal court on November 28, 2006, 90 days later." (Pl. Mem. at

3.)  However, more than 90 days fall between August 28 and November 28.  Neither Plaintiff nor Defendant points to admissible record evidence for the critical, calendarial fact of when Plaintiff received the right to sue letter.  Moreover, Plaintiff's complaint, whose writing is at times difficult to decipher, appears to indicate that she received her right to sue letter on September 2, 2006, which would allow her suit to proceed.  At the next status hearing, Plaintiff's counsel should come prepared to discuss whether the representation made in Plaintiff's memorandum of law is accurate.  If so, dismissal may indeed be appropriate.  *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (dismissal appropriate where the trial judge observed that the plaintiff failed to file his complaint within ninety days of receiving notice).

### C.    Time Barred Claims

Plaintiff argues that Defendant failed to accommodate[12] her request for a day off of work on November 25, 2003 to celebrate a religious holiday.  Plaintiff testified in her deposition that she was given a day off on February 1, 2004 for another religious holiday, but only after repeated requests.  To the extent that Plaintiff conceives of her repeated requests for the February 1 holiday as a Title VII violation, they occurred prior to February 10, 2004.  Like the failure to accommodate her November 2003 request, it is time barred.  Defendant's motion for summary judgment on Plaintiff's religious accommodation claims is granted.

The same result attaches to the following alleged discrete acts of discrimination: (i) Buchanan's statements to Mirza that the former was always "bitching" about her schedule (November 2003 to February 1, 2004); (ii) Gardner's statements calling Mirza a "Paki piece of shit" or some variation (September 2003 to November 2003); (iii) Mirza's exclusion from a party

---

[12] Under Title VII, the term religion is defined in such a way as to impose a duty "to reasonably accommodate to an employee's or prospective employee's religious observance or practice" unless it imposes "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

held by co-workers (December 2003); (iv) Mirza's exclusion from an office holiday party (early January 2004). Summary judgment for Defendant is granted as to each of these discrete acts.

### D.   The Scope of Plaintiff's EEOC Charge and its Effect on Plaintiff's Claims for Retaliation, Discriminatory Discharge, and Discrimination Based on Color

Defendant next argues that Plaintiff's claims for retaliation, discriminatory discharge, and discrimination based on color cannot go forward because those claims were not included in her EEOC charge. Plaintiff's EEOC Charge included checked boxes for discrimination based on (i) religion and (ii) national origin.[13] The "particulars" of her charge were as follows:

> I was hired by Respondent on or about June 30, 2003 as a Sales Associate. During my employment I was treated differently than my non-Pakistani co-workers in that my co-workers stole my sales, my supervisor gave my sales to my co-workers, my supervisor called me demeaning names, I was not assisted when needed, I was refused religious days off, I was not invited to company sponsored events, I was constantly told to find another job and I was denied sick leave. On or about June 14, 2004,[14] I resigned.

> I believe I have been discriminated against because of my *race*, Pakistani, and my religion, Muslim, in violation of Title VII of the Civil Rights Act of 1964, as amended.

[45], Ex. 11 (emphasis added). The face of Plaintiff's charge, including the narrative "particulars" can be read fairly as including three theories of discrimination: race, religion, and national origin. By the time that Plaintiff filed her complaint with the Court, her case acquired additional bases for recovery. Plaintiff's complaint alleges violations of Title VII based on color, national origin, race, and religion. [1, at 3]. The complaint further alleges that Defendant terminated Plaintiff's employment, failed to accommodate her religion, failed to stop harassment, and "retaliated against the plaintiff because the plaintiff did something to assert rights protected by" Title VII. *Id.* at 3-4.

---

[13] Unchecked were available boxes for: race, color, sex, retaliation, age, disability, and "other." See [45], Ex. 11.

[14] Plaintiff acknowledges that her actual last day of work was May 14, 2004. (Pl. Resp. Def. SOF ¶ 1.)

The scope of a judicial proceeding subsequent to an EEOC charge "is limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The limitation, like the statutory limitations period, is not jurisdictional, but is a condition precedent to recovery. See *id.* & n.20. "To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge," a court must decide whether "the allegations are like or reasonably related to those contained in the [EEOC] charge." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). The rule is designed at once to give notice to the employer of the nature of the claims against it and to provide an opportunity for the EEOC and the employer to settle the dispute. *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005). Nonetheless, the standard is a liberal one. *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525-26 (7th Cir. 2008). Claims are reasonably related – and hence properly raised in a subsequent lawsuit – "if there is a factual relationship between them." *Kersting*, 250 F.3d at 118. A plaintiff's failure to check a specific box on an EEOC charge bears on the analysis, but is not dispositive. Rather, other factors, such as the factual information provided in the charge, are "[m]ore significant" than "technical defect[s]." *Cable v. Ivy Tech State College*, 200 F.3d 467, 477 (7th Cir. 1999); *Ajayi v. Aramark Bus. Svcs., Inc.*, 336 F.3d 520, 528 (7th Cir. 2003) ("we do not rest our decision here on an omitted checkmark"). In short, the pertinent inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Ajayi*, 336 F.3d at 527. Where the allegations of a complaint "can be reasonably inferred from the facts alleged in the charge," the allegations are within the scope of the EEOC charge. *Id.*

The Seventh Circuit further teaches that "[a]llegations outside the body of the charge may be considered" in a subsequent suit "when it is clear that the charging party intended the agency to investigate the allegations." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994).

For example, an EEOC affidavit that contains an "explicit reference" to the types of discrimination alleged in the complaint or a "handwritten addendum * * * suggesting" a given type of discrimination may act to preserve a claim for relief in a subsequent lawsuit. *Id.* (citing cases).

Defendant argues, correctly, that Plaintiff's retaliation claim is beyond the scope of her EEOC charge. Plaintiff's counterargument on this score essentially repeats the generally applicable framework in the Seventh Circuit. (Pl. Mem. at 8-9.) That framework may not be "rigid," as Plaintiff notes, but it is not a fiction either. Plaintiff did not check the box for retaliation in her EEOC charge. The particulars of her complaint do not mention retaliation, and neither her EEOC "Charge Questionnaire" ([45], Ex. 13) nor the "EEOC notes from Mirza's EEOC complaint" ([51-3], Ex. 11) contains even a hint of a retaliation claim. Finally, because Plaintiff filed her EEOC charge after the termination of her employment, she cannot take advantage of the exception to the exhaustion requirement that allows a Title VII plaintiff to include a retaliation claim in her complaint where the alleged retaliation occurred in response to the original EEOC charge. See, *e.g.*, *Gawley v. Indiana Univ.*, 276 F.3d 301, 314 n.8 (7th Cir. 2001). In sum, an EEOC investigation into retaliation could not reasonably be expected to grow out of Plaintiff's charge, and neither the EEOC nor Defendant received proper notice of the allegation; therefore, Defendant's motion for summary judgment on Plaintiff's retaliation claim is granted. *Cf. Geldon*, 414 F.3d at 820 (summary judgment appropriate where initial complaint did not put defendant and EEOC on notice of subsequently raised allegations).

Plaintiff's discriminatory discharge claim fares better. The Seventh Circuit teaches that "the appropriate standard for measuring exhaustion is not those charges that the EEOC in fact considered but those that were brought to its attention." *Rush*, 966 F.2d at 1112. Where written

documents are filed with the charge, courts will "frequently consider allegations found outside the body of the charge."[15] *Sickinger v. Mega Systems, Inc.*, 951 F. Supp. 153, 157 (N.D. Ind. 1996). Because the "employer receives copies of all of the documents filed with the charge," the employer "can read through the entire submission and know all of the allegations against it." *Id.* Applying these teachings, Defendant's motion for summary judgment must be denied.

Summary judgment is not appropriate at this time because Plaintiff's summary judgment materials include a document titled "EEOC notes from Mirza's EEOC complaint" ([51-3], Ex. 11) ("EEOC notes"). During Plaintiff's deposition, counsel for Defendant asked Plaintiff about the EEOC notes: "I am going to show you what I have marked for identification as Deposition Exhibit 15, which I will represent to you are notes that *we* obtained from the EEOC." (Pl. Dep. at 95) (emphasis added.) Neither party discusses this document in its summary judgment materials, nor is the provenance of the document disclosed, although the framing of counsel's question indicates that Defendant may have received the EEOC notes with Plaintiff's charge. Because there is ambiguity in the record, the Court presumes that this is how Defendant came to possess the document.

After listing several of Plaintiff's complaints about Buchanan, the EEOC notes include the following statement: "[Plaintiff] states that she felt stressed by Sylvia, so she needed to quit." (EEOC notes at 2.) This, combined with other aspects of Plaintiff's EEOC charge, is sufficient to render her claim exhausted. A claim for discriminatory discharge may be based on constructive discharge. *Fischer v. Avande, Inc.*, 519 F.3d 393, 408-09 (7th Cir. 2008). In a constructive discharge case, a plaintiff is "forced to resign because her working conditions, from the standpoint of the reasonable employee, [have] become unbearable." *Id.* at 409. A

---

[15] However, when a plaintiff makes an *oral* allegation to the EEOC that is omitted from a subsequent charge, the plaintiff my not bring a lawsuit based on the omission. *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 665 (7th Cir. 2000).

constructive discharge claim can be based on either (i) discriminatory harassment or (ii) communications to the employee indicating that "the handwriting was on the wall and the axe was about to fall." *Id.* (internal quotation marks and citation omitted). In this vein, Plaintiff's EEOC charge itself states that "[Plaintiff] was constantly told to find another job." [54], Ex. 11. The analysis does not change merely because Plaintiff wrote in her EEOC charge that she "resigned" her position.[16] The *sine qua non* of a constructive discharge claim is that the plaintiff leaves her job, but out of compulsion. See, *e.g.*, BLACK'S LAW DICTIONARY 495 (West 8th ed. 2004).[17]

Finally, Defendant argues that Plaintiff's claim for discrimination based on color is also beyond the scope of Plaintiff's EEOC charge. "When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek*, 31 F.3d at 503 (7th Cir. 2003). In *Cheek*, for instance, the Seventh Circuit held that a plaintiff had not preserved a claim for sexual *harassment* where her EEOC charge was based on sex *discrimination*. *Id.* It is hardly obvious how allegations of discrimination based on race and national origin would throw the EEOC's investigators off the scent of a claim of discrimination based on color. Defendant has

---

[16] Defendant also argues in its memorandum of law that "Mirza testified that she voluntarily resigned her employment. ([Def.] SOF ¶¶ 35, 36.)" (Def. Mem. at 9.) First, this is irrelevant to Defendant's argument: Defendant has moved for summary judgment based on the *scope* of the EEOC charge, not the merits of Plaintiff's claim. Second, the material that Defendant cites does not support the representation that Defendant made to the Court – that Mirza testified that her departure was voluntary. In fact, the deposition testimony cited in Defendant's fact statement supports the exact opposite conclusion. Plaintiff responded "yes" when she was asked whether she believed her working conditions were intolerable. (Pl. Dep. at 179-80.)

[17] Later in its memorandum of law, Defendant seeks, in a footnote, summary judgment on the merits of the constructive discharge claim. (See Def. Mem. at 13 n. 9.) The Court is disinclined to enter summary judgment based on footnote argumentation, if for no other reason than that Defendant addressed only one of the two methods by which a plaintiff can demonstrate constructive discharge. See *Fischer v. Avande, Inc.*, 519 F.3d 393, 408-09 (7th Cir. 2008).

presented the Court with nothing more than a missed checkbox and the omission of the word "color." (Def. Mem. at 9.) It has not intimated that the allegations related to discrimination based on Plaintiff's color involve different people or conduct. In short, Defendant has done nothing to upset the notion that Defendant's "lawyers could be expected to realize that the facts as alleged in the EEOC charge might support a claim" of discrimination based on color. See *id.* at 504 (distinguishing, while describing with apparent approval, the analysis in *Jenkins v. Blue Cross Mutual Hosp. Ins., Inc.*, 538 F.2d 164 (7th Cir. 1976)); *Grey v. City of Norwalk Bd. of Educ.*, 304 F. Supp. 2d 314, 323 (D. Conn. 2004) (holding that a claim of discrimination based on national origin was within the scope of an EEOC charge alleging discrimination based on sex, race, age, and color). Defendant's motion for summary judgment on Plaintiff's claim for discrimination based on color is denied.

In summary, Defendant's motion for summary judgment based on Plaintiff's failure to exhaust her administrative remedies is granted with respect to Plaintiff's claim for retaliation, but is denied with respect to Plaintiff's claims for discriminatory discharge and for discrimination based on color.

### E.     Plaintiff's *Prima facie* Case for Discrete Acts of Discrimination

As discussed in Part IV.A, to make out a *prima facie* case of discrimination, a plaintiff must establish that: (1) she was a member of a protected class; (2) she was qualified for the job or was otherwise meeting the defendant's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably. See *Fane*, 480 F.3d at 538. Defendant bases its motion for summary judgment on the third element of the *prima facie* case, arguing that Plaintiff cannot show that she suffered an adverse employment action with respect to five incidents of

discrimination.  According to Defendant, Plaintiff's "complaints are simply de minimus work-a-day (sic) complaints which do not rise to the level of an adverse employment action." (Def. Mem. at 11.)

A "cognizable adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 838 (7th Cir. 2008) (quoting *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000)).  The action must be "more than a mere inconvenience or an alteration of job responsibilities." *De La Rama v. Ill. Dept. of Human Svcs.*, 541 F.3d 681, 685 (7th Cir. 2008) (internal quotation marks and citation omitted).  Rather, Plaintiff must show that she has suffered material harm. *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).  A negative performance evaluation, like a "letter of concern" in an employee's personnel file, does not by itself amount to an adverse employment action. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 862 (7th Cir. 2005); *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510-11 (7th Cir. 1999).  However, the Seventh Circuit has emphasized that a case-by-case assessment usually is required to determine whether an employer's actions against an employee were materially adverse. *De La Rama*, 541 F.3d at 686.  In *Chaudhry*, for example, the Seventh Circuit reasoned that denying opportunities to an employee to visit customers, which in turn prevented him from qualifying for pay increases, sufficiently constituted an adverse employment action under Title VII. *Chaudry*, 546 F.3d at 555.

Defendant's memorandum of law singles out five employment actions which Plaintiff cannot show were materially adverse:  (i) Gardner would "steal sales" from Mirza; (ii) Buchanan changed Mirza's work schedule without telling her; (iii) Buchanan assisted other sales associates

and placed Mirza on the back register; (iv) Buchanan told Plaintiff to begin looking for another job; and (v) Buchanan called Mirza's home on May 14, 2004 to "tell her that she needed to adhere to the proper work schedule." (Def. Mem. at 10.)

The Court grants Defendant's motion with respect to Buchanan's statements to Plaintiff advising her to begin looking for another job, Buchanan's May 14 call to Mirza's home, and Buchanan's changes to Mirza's work schedule. The record evidence catalogues the occurrence of these events, but Plaintiff has failed to link these actions to material changes in the condition of her employment. Plaintiff suggests that the "remarkable affect (sic) on [Plaintiff's] health" shows that the actions taken by her employer were materially adverse. (Pl. Mem. at 10.) Not only does Plaintiff fail to link her medical conditions to Defendant's behavior, but a plaintiff's reaction to her employer's conduct is not the lodestar for determining whether an employment action was materially adverse.

Plaintiff's fact statement directly links her anxiety and depression to "work related issues" (Pl. SOAF ¶ 81). However, the Doctor's report that Plaintiff cites merely reports that Plaintiff "wishes to locate a therapist for anxiety and stress related issues." [51-3], Ex. 6 at 1. Likewise, Plaintiff's deposition testimony indicates that she did not seek the treatment of a therapist (Pl. Dep. at 226) and that her general practitioner prescribed Prozac due to stress, fatigue, crying, and physical pain. While no doubt distressful, Plaintiff has not marshaled evidence linking the conduct of her employer to her health conditions. The same analysis applies to Plaintiff's other medical conditions, reports for which were included with Plaintiff's summary judgment materials. See generally [51-2]; [51-3]. Of greater importance is that the existence of a materially adverse employment action is based on the objective conduct of the employer rather than the subjective, psychic response of the employee. *Mangano v. Sheahan*, 2002 WL

1821738, at *7 (N.D. Ill. Aug. 7, 2002). See also *Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001) (oral reprimand, absent "tangible job consequences," is not a basis for Title VII liability) (citing *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998); *id.* ("job-related criticism can prompt an employee to improve her performance and thus lead to a new and more constructive employment relationship"); *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (scheduling changes were not adverse).

Plaintiff still may be able to use these three actions in support of other claims (*e.g.*, her still-live claim for constructive discharge), but given Plaintiff's minimal efforts to articulate how these workplace grievances affected the conditions of her employment, she has failed to meet her burden on summary judgment and can no longer maintain claims for these actions as discrete claims.

However, Defendant's motion for summary judgment is denied with respect to Gardner's alleged sale stealing. Because Plaintiff's income was based at least in part on commission, sale stealing necessarily would have affected Plaintiff's paycheck. See, *e.g.*, *Oest*, 240 F.3d at 612 (decrease in wage or salary indicates a materially adverse change). For similar reasons, summary judgment is also denied on Plaintiff's claim that Buchanan assisted other employees and put Plaintiff on the back register. The more interesting questions relate to whether or not the alleged conduct of either Gardner or Buchanan can be imputed to Defendant (see *Doe v. Oberweis Dairy*, 456 F.3d 704, 716-18 (7th Cir. 2006)), but that issue has not been briefed by the parties. Finally, the discrete acts of discrimination which were not singled out by Defendant, and are neither time barred nor unexhausted, remain a part of the litigation.

### F.    Plaintiff's Hostile Work Environment

In order to demonstrate harassment "that rises to the level of a statutory violation, the plaintiff must prove that his or her work environment was both subjectively and objectively offensive; one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so." *Cerros v. Steel Technologies, Inc. (Cerros II)*, 398 F.3d 944, 947 (7th Cir. 2005) (internal quotation marks omitted). Plaintiff must prove three additional elements as well: that the harassment was based on a protected characteristic; the harassment was so severe or pervasive as to alter the conditions of employment; and there is a basis for employer liability. *Id.*; *Atanus*, 520 F.3d at 676. The Supreme Court has made clear, however, that psychological injury is not an essential ingredient of a hostile work environment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) ("Title VII comes into play before the harassing conduct leads to a nervous breakdown."); *Saxton*, 10 F.3d at 533 (plaintiff need not prove psychological injury).

Where a plaintiff alleges harassment that is neither severe nor pervasive, summary judgment is appropriate. See, *e.g.*, *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 851 (7th Cir. 2007); *Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998). Unambiguously racial epithets are generally considered to fall along the "severe end of the spectrum" (*Cerros II*, 398 F.3d at 950-51), as is physically threatening behavior (*cf. Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005)). Even where incidents of allegedly harassing behavior are not considered severe, "a relentless pattern of lesser harassment that extends over a long period of time * * * violates [Title VII]." *Cerros v. Steel Technologies, Inc. (Cerros I)*, 288 F.3d 1040, 1047 (7th Cir. 2002).

Defendant makes two arguments with respect to Plaintiff's hostile work environment claim. The first argument is that Plaintiff has failed to make out a *prima facie* case. The second argument is that even if Plaintiff can make out her *prima facie* case, Defendant is nonetheless entitled to an affirmative defense. Neither argument succeeds.

      *1.*      Prima facie *Case*

Plaintiff's hostile work environment claim comprises acts committed by Buchanan and by Gardner. Defendant argues that Plaintiff cannot establish two of the required four elements of a hostile work environment claim.

First, Defendant argues that Plaintiff cannot demonstrate that any harassment that she endured was *based on* a protected characteristic (*i.e.*, that Buchanan and Gardner harbored discriminatory intent). Defendant bases the argument on the fact that Buchanan, Plaintiff's supervisor, never used racial or religious derogatory language in speaking with Plaintiff. Nor can liability be imposed based on what Defendant appears to conceive as Gardner's "unenlightened" remarks about Plaintiff because they were isolated. (Def. Mem. at 12). Neither argument is well taken.

In order to demonstrate that Buchanan's actions were based on a protected characteristic, it is true that Plaintiff needs to establish that Buchanan possessed discriminatory intent. See, *e.g.*, *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005). However, that connection need not be explicit. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 2005). In this case, Plaintiff alleges, with regard to her litany of complaints about Buchanan, that she was the only one singled out by Buchanan and that she was the only Pakistani Muslim. See Pl. Dep. at 196-97; *cf. Hardin*, 167 F.3d at 346 (upholding summary judgment for the defendant in part because the plaintiff "was not singled out"). Moreover, Plaintiff alleges that she

complained to Buchanan about Gardner's abusive treatment of her, but the record indicates only that the explicitly racial comments ceased (Def. SOF ¶ 14). If nothing else, the combination of facts could support an inference that Buchanan's conduct was based on Plaintiff's race. The identical conclusion attaches to Gardner's alleged conduct, and here the inference is more easily drawn. Viewing the facts in the light most favorable to the non-moving party, Gardner's alleged sale stealing, projectile throwing, and physically threatening behavior was punctuated by unambiguously racial slurs on two occasions. The fact that the use of racial epithets was sparing does not change the fact that Gardner's use of epithets would support the inference that Gardner's other conduct was based on Plaintiff's race.

Second, Defendant argues that Plaintiff cannot show that any harassment that she endured was severe or pervasive. In support of its argument, Defendant identifies five incidents that form the basis of Plaintiff's hostile work environment claim. (See Def. Mem. at 12; Def. SOF ¶¶ 30.) However, Defendant's fact statement, from which these five incidents are drawn, did not purport to identify the universe of events that form the basis of Plaintiff's claim – and Plaintiff pointed to other incidents during her deposition. (See, *e.g.*, Pl. Dep. at 181-185.) Plaintiff's hostile work environment claim includes conduct by Gardner that is both severe (the racial epithets discussed above) and apparently pervasive (the sale-stealing, for example). (See, *e.g.*, Pl. Dep. at 101-102.) Although it is not entirely clear from the record evidence exactly how pervasive Gardner's conduct was, that ambiguity in the record must be construed against Defendant at this stage of the litigation. See *Cerros I*, 288 F.3d at 1046 (vacating judgment for an employer on a hostile work environment claim and characterizing as a "critical omission" the lack of findings about the pervasiveness of the harassing behavior). As to the complaints about Buchanan, too, Defendant failed to pin down Plaintiff's deposition testimony which suggested

that Buchanan regularly singled out Plaintiff and granted preferential treatment to Plaintiff's non-Pakistani, non-Muslim co-workers. (See, *e.g.*, Pl. Dep. at 182-83.)

In short, Plaintiff indicated that many of her grievances were ongoing and, at least with respect to the portions of the depositions that were furnished to the Court, it does not appear that defense counsel held Plaintiff's feet to the fire and made precise inquiries about the frequency of their occurrence. Defendant must live with that ambiguity for purposes of the instant motion. Recognizing that "in discrimination cases, the whole can be greater than the sum of the parts" (*Silk v. City of Chicago*, 194 F.3d 788, 807-808 (7th Cir. 1999) (internal quotation marks omitted)), Plaintiff has, on the record currently before the Court, made out both of the challenged elements of her *prima facie* case.

### 2. *Defendant Has Failed to Establish Its Affirmative Defense*

Claims for hostile work environment based on harassment are subject to an affirmative defense articulated by the Supreme Court in two cases that were handed down on the same day, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). This affirmative defense comprises two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 742; *Faragher*, 524 U.S. at 807. With respect to the first part of the test, the implementation of an anti-harassment policy speaks only to whether the employer had notice of harassment and exercised reasonable care to prevent harassment. "It does not necessarily establish that the employer acted reasonably in *remedying* the harassment after it has occurred or in preventing future misconduct." *Cerros II*, 398 F.3d at 953 (emphasis added). With respect to

the second prong, the relevant inquiry is "whether the employee adequately alerted her employer to the harassment * * * not whether she followed the letter of the reporting procedures set out in the employer's harassment policy." *Id.* at 952.

As to the first prong of the *Ellerth/Faragher* defense, Defendant argues only that it "promulgated an effective anti-harassment policy with complaint procedure." (Def. Mem. at 14.) Yet, *Cerros II* teaches that promulgation alone is not sufficient to establish the first prong of the defense. And with respect to the second prong, there is some record testimony indicating that Plaintiff was told by her human resources manager that the latter did not want to listen to Plaintiff's complaints about Judy Gardner. (See, *e.g.*, Riordan Dep. at 77.) In short, Defendant's less than fulsome discussion of the legal framework and pertinent facts fails to persuade the Court that summary judgment in Defendant's favor on Plaintiff's hostile work environment claim is appropriate.

## V.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [43] is granted in part and denied in part. The following acts of discrimination are time barred, at least as discrete claims: Plaintiff's failure to accommodate claims; Buchanan's statements that Plaintiff was always "bitching" about her schedule; Gardner's use of racial epithets; Plaintiff's exclusion from a party held by her co-workers; and Plaintiff's exclusion from an office holiday party. The other discrete claims remain, although some ultimately may prove time-barred. Defendant's motion for summary judgment based on Plaintiff's failure to exhaust is granted with respect to Plaintiff's retaliation claim, but denied with respect to Plaintiff's claims for constructive discharge and for discrimination based on color. Defendant's motion for summary judgment based on Plaintiff's failure to make out a *prima facie* case of discrimination is granted with respect to Plaintiff's

claims that: Buchanan advised Gardner to look for another job; Buchanan called Plaintiff's house to complain on May 14, 2004; and Buchanan changed Plaintiff's work schedule without telling her. Defendant's motion is denied with respect to Gardner's alleged sale stealing and Buchanan's preferential treatment of Plaintiff's co-workers. Finally, the Court denies Defendant's motion for summary judgment on Plaintiff's hostile work environment claim.

Dated: May 6, 2009

_____
Robert M. Dow, Jr.
United States District Judge