**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GUL-E-RANA MIRZA           )
                           )
      Plaintiff,         )
                           )
v.                         )   CASE NO. 06-cv-6484
                           )
THE NEIMAN MARCUS GROUP, INC., )   Judge Robert M. Dow, Jr.
                           )
      Defendant.         )

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's motion for reconsideration ("Def. Mot.") [59] of the Court's May 6, 2009, Memorandum Opinion and Order (the "May 6 Order") [57]. For the reasons set forth below, Defendant's motion [59] is denied.

**I.   Introduction**

In the May 6 Order, the Court granted in part and denied in part Defendant's motion for summary judgment [43] on Plaintiff's Title VII claims. Defendant's motion asks the Court to reconsider the denial of summary judgment with respect to Plaintiff's claim for discriminatory discharge.[1] Defendant had moved for summary judgment on Plaintiff's discriminatory discharge

---

[1] Defendant intimates in its motion for reconsideration that there is some uncertainty about Plaintiff's legal theory regarding her discharge. Def. Mot. at 2. There can be none. As Defendant itself seemed to realize, the theory is constructive discharge. Def. Summ. J. Mem. at 9 n.7. Although Plaintiff's EEOC charge itself states that Plaintiff resigned and Plaintiff subsequently admitted that she resigned (Pl. Resp. Def. SOF ¶ 32), Plaintiff nonetheless checked a box in her form complaint stating that Defendant terminated her employment (Compl. ¶ 12) when she filed suit in this Court (at that time, acting *pro se*). *Pro se* complaints are construed liberally, which makes added sense here since the complaint did not have a box for constructive discharge and plaintiffs are not required under the federal rules to spell out their legal theories in any event.

    There is no uncertainty about the legal theory, however, because a constructive discharge theory is all that remains available. As the Court noted in the May 6 Order, the fact of Plaintiff's resignation does not alter the analysis. In fact, it affirms it: "The *sine qua non* of a constructive discharge claim is that the plaintiff leaves her job, but out of compulsion." May 6 Order at 22.

claim on the ground that Plaintiff failed to exhaust her administrative remedies with respect to that claim. The Court denied Defendant's motion, concluding that an EEOC investigation was reasonably likely to grow out of Plaintiff's EEOC charge and that Defendant was put on notice of the discharge claim. (The Court agreed with Defendant that Plaintiff failed to exhaust her administrative remedies with respect to her retaliation claim.)

According to Defendant's motion for reconsideration, however, the Court (i) stepped outside of its proper role within the adversarial system, and (ii) misapprehended the record with respect to Plaintiff's discharge claim. "Defendant respectfully posits that this is one of those rare circumstances where manifest error * * * renders reconsideration (and reversal) of the Court's prior Order * * * appropriate." Def. Mot. at 9. Plaintiff did not file a response to Defendant's motion.

Defendant's motion for reconsideration is denied. The motion for reconsideration misconstrues the May 6 Order, overlooks the contents of Plaintiff's opposition to summary judgment, and fails to apply the governing legal standards regarding exhaustion. The Seventh Circuit teaches that application of the exhaustion standards is fact specific and demands close attention by the trial court. While Defendant's motion for reconsideration devotes itself to perceived flaws in the Court's analysis, it does not convincingly argue that the legal standards tip in Defendant's favor.[1]

---

[1] As discussed below, it was Defendant's cursory treatment of the merits of Plaintiff's discharge theory that excused Plaintiff from putting a fine point on and defending her legal theory. Any ambiguity could have been cured, or worked in Defendant's favor, had Defendant either taken advantage of various discovery devices or simply provided more extensive analysis on the merits of Plaintiff's claim.

2

## II. The May 6 Order

### A. Exhaustion

In the May 6 Order, the Court set out the legal framework in the Seventh Circuit for evaluating whether a Title VII plaintiff exhausted her administrative remedies. The basic question is whether the lawsuit's allegations fall within the scope of the EEOC charge:

> To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge, a court must decide whether the allegations are alike or reasonably related to those contained in the EEOC Charge. The rule is designed at once to give notice to the employer of the nature of the claims against it and to provide an opportunity for the EEOC and the employer to settle the dispute. Nonetheless, the standard is a liberal one. Claims are reasonably related—and hence properly raised in a subsequent lawsuit—if there is a factual relationship between them. A plaintiff's failure to check a specific box on an EEOC charge bears on the analysis but is not dispositive. Rather, other factors, such as the factual information provided in the charge, are more significant than technical defects. In short, the pertinent inquiry is what EEOC investigation could reasonably be expected to grow from the original complaint. Where the allegations of a complaint can be reasonably inferred from the facts alleged in the charge, the allegations are within the scope of the EEOC charge.
>
> * * *
>
> [T]he appropriate standard for measuring exhaustion is not those charges that the EEOC in fact considered but those that were brought to its attention. Where written documents are filed with the charge, courts will frequently consider allegations found outside the body of the charge. Because the employer received copies of all the documents filed with the charge, the employer can read through the entire submission and know all of the allegations against it.

[57 at 19-21] (footnote, brackets, quotation marks, and citations omitted).

In applying the legal standards, the Court noted that there was some ambiguity in the record related to what information Defendant had received from the EEOC. At Plaintiff's deposition, the Court observed, counsel for Defendant asked Plaintiff about notes from the EEOC (the "EEOC Notes"). Counsel stated that "we received [the notes] from the EEOC." Pl. Dep. at 95. Those notes, which were included as part of the record, stated that Plaintiff "felt

3

stressed by [her supervisor], so she needed to quit." Pl. Resp. Def. SOF, Ex. 11 ("EEOC Notes"), at 2.

In addition, the Court noted that Plaintiff's EEOC charge stated, in part, that "[Plaintiff] was constantly told to find another job." See May 6 Order at 22. The Court concluded that the statement in the EEOC charge, *in conjunction with other aspects of the EEOC charge*, as well as the EEOC Notes, rendered a discriminatory discharge claim within the scope of the EEOC charge. *Id.*

### B. The Merits of the Discharge Claim

In the May 6 Order, the Court noted Defendant's argument—made only in a footnote—that Plaintiff could not win on the merits of her claim. However, the Court concluded (also in a footnote) that summary judgment based on Defendant's "footnote argumentation" was not appropriate and noted that Defendant's footnote barely touched upon the pertinent legal framework. May 6 Order at 22 n.17.

## III. Defendant's Motion for Reconsideration

In the main, Defendant's motion for reconsideration focuses on errors that Defendant says were made by the Court. Defendant first argues that the Court exceeded its role within the adversarial process because "Plaintiff did not address, let alone oppose, Defendant's motion for summary judgment on a discharge claim based on her failure to exhaust her administrative remedies * * *." Def. Mot. at 3. Likewise, Defendant says that Plaintiff's lack of opposition to summary judgment on the merits of the discharge claim demonstrates that Plaintiff abandoned the claim altogether.

The second principal error asserted by Defendant was the Court's mistaken reliance on the EEOC Notes in undertaking the exhaustion analysis. In essence, Defendant argues that the

4

Court's ruling was based on a misapprehension. Specifically, Defendant argues that the EEOC Notes were dated *after* Plaintiff filed her discrimination charge.[2] Moreover, Defendant argues that the Court should not have considered the EEOC Notes because the parties had discussed those notes only with respect to another part of Plaintiff's lawsuit.

**IV.      Legal Standard on Motion for Reconsideration**

A court may alter or amend a judgment when the movant "clearly establish[es]" that "there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). In regard to the "manifest error" prong, the Seventh Circuit has elaborated that a motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

While the Federal Rules of Civil Procedure allow a movant to bring to a court's attention a manifest error of law, it "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). And because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

---

[2] Defendant also (incorrectly) argues that the EEOC Notes would constitute inadmissible hearsay. The notes would be admissible on the question of what investigation reasonably could be expected to grow out of the information that the EEOC had from Plaintiff's assertions. See also *infra* Part V.B. The effect that words have on a listener is not hearsay. *United States v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002).

5

## V. Analysis

### A. The Court's Role within the Adversarial System

As to some of the myriad legal claims in this case—including, most notably, the discharge claim on which Defendant focuses in its motion for reconsideration—neither party provided extensive or well organized briefing. Defendant blames the 15-page limit established in our local rules, but Defendant did not move to file an oversized brief—a motion that surely would have been granted in the circumstances of this case. Thus, on the substance of Plaintiff's discharge claim, Defendant moved for summary judgment in a footnote; as to the exhaustion inquiry, Defendant added a few sentences of analysis to its sketch of the legal framework on exhaustion. (Plaintiff's briefing was even more abbreviated, as she addressed all of Defendant's exhaustion arguments in one catchall portion of her brief). In short, neither side did much to assist the Court's resolution of the legal issues that are the subject of the instant motion for reconsideration.

As to the merits of the discharge claim, the May 6 Order made clear that Defendant was not entitled to summary judgment because it failed to meet *its* initial adversarial and summary judgment burdens. The disposition of Defendant's footnoted motion for summary judgment was appropriate. "We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *White Eagle Co-Op Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

Nothing about Defendant's motion for reconsideration leads the Court to retreat from its analysis. Defendant's bald assertion—buried in a footnote—that Plaintiff could not prevail on the merits could not entitle Defendant to summary judgment. Indeed, Defendant's footnote said very little about the merits of the discharge claim: After citing two cases for the proposition that a plaintiff must overcome a high bar to prevail in a constructive discharge case, Defendant's argument consisted of the following: "Even if Mirza had exhausted a constructive discharge claim by including it within the scope of her EEOC charge, Mirza *certainly* cannot meet the high standard necessary to establish intolerable working conditions based on her testimony and the undisputed facts." Def. Summ. J. Mem. at 13-14 n.9 (emphasis added). Although Defendant may well be correct that Plaintiff will have a tough row to hoe on the merits, Defendant cast only vague nods to the record and its analysis was wholly conclusory. That was insufficient to gain summary judgment in its favor. *Celotex*, 477 U.S. at 323; *cf.* also *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 466 & n.15 (1986) (concluding that a party had not preserved an issue for appellate review where the party "raised the * * * issue in a footnote in his memorandum in opposition to summary judgment" in the trial court); *Bakalis v. Golembeski*, 35 F.3d 318, 326 n.8 (7th Cir. 1994) (argument forfeited before the appeals court where "made only in a footnote in the opening brief and * * * not developed fully until the reply brief").

Defendant similarly is incorrect with respect to its argument that Plaintiff did not oppose Defendant's exhaustion argument. According to Defendant, "Plaintiff did not address, let alone oppose, Defendant's motion for summary judgment on a discharge claim based on her failure to exhaust her administrative remedies * * *." Def. Mot. at 3. The pertinent portion of Defendant's

7

summary judgment memorandum was captioned: "Allegations Outside the Scope of Mirza's EEOC Charge are Barred." Plaintiff's response, though general, was captioned: "Allegations Outside the Scope of Mirza's EEOC Charge are *Not* Barred." Pl. Summ. J. Resp. at 8 (emphasis added). Plaintiff's brief set out the legal framework for exhaustion and concluded that "the plaintiff claims are actionable and Defendant is not entitled to summary judgment on *these* claims." *Id.* at 9 (emphasis added). Plaintiff's response, then, addressed all of Defendant's exhaustion arguments, even if the analysis was not individuated. In short, Defendant's vague and deeply truncated argument begat an even vaguer and more truncated response from Plaintff. But a response it was. Thus, the Court did not take up an issue abandoned by Plaintiff.[3]

To the extent that Defendant argues that the Court inappropriately took into account the EEOC Notes, Defendant incorrectly conflates a party's failure to present argument sufficient to preserve an issue with the notion that a Court must put blinders on when it considers a summary judgment record. *Cf. Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 678 (7th Cir. 2000) (*de novo* review of a summary judgment order requires the appeals court to "hunt[] through the record compiled in the summary judgment proceeding to see whether there may be a genuine issue of material fact lurking there * * *"). The parties—however undeveloped their arguments were—briefed the pertinent legal framework and submitted record evidence to the

---

[3] Defendant also intimates that Plaintiff may have abandoned the discharge claim prior to summary judgment, but does not point to supportive record evidence. "Through the course of discovery in this matter, Defendant was uncertain as to whether Plaintiff was actually alleging she was discriminatorily discharged by Defendant." Def. Mot. at 2. In support of this point, Defendant cites only Plaintiff's *pro se* complaint, which indeed includes a checked box for discriminatory discharge. Absent any indication that Plaintiff had abandoned her claim, addressing the claim in order to prevail at summary judgment was neither a mere formality nor an exercise in "overly cautious" briefing (Def. Mot. at 2), but rather an application of the cardinal principle that a complaint defines the scope of the action. See, *e.g.*, 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1202 (3d ed. 2009 supp.) (discussing the purposes served by the complaint); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) (upholding denial of a motion to intervene because the intervenors would have effectively expanded the scope of the action).

Court. Examining those submissions was not improper. Moreover, and as discussed below in Part V.B, removing the EEOC Notes from consideration does not change the analysis. Although the Court's May 6 Order could—and perhaps should—have been clearer on the point, Plaintiff's EEOC charge itself was sufficient to exhaust her administrative remedies with respect to her discharge claim.

B. **Excluding the Notes Does Not Alter the Court's Analysis**

Defendant is correct that the Court referred to factual ambiguity in the record in the May 6 Order. Defendant also is correct that the date on the EEOC Notes indicates that Defendant did not have the information contained in the notes until after Plaintiff filed her lawsuit. That calendarial fact does not make the notes irrelevant, but it does alter their evidentiary purpose. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985). In any event, Plaintiff's discharge claim is within the scope of the EEOC charge, and therefore she has exhausted her administrative remedies with respect to the discharge claim.

The body of Plaintiff's EEOC charge reads:

> I was hired by [Defendant] on or about June 30, 2003 as a Sales Associate. During my employment I was treated differently than my non-Pakistani co-workers in that my co-workers stole my sales, my supervisor gave my sales to my co-workers, my supervisor called me demeaning names, I was not assisted when needed, I was refused religious holidays off, I was not invited to company sponsored events, *I was constantly told to find another job* and I was denied sick leave. On or about June 14, 2004, I resigned.
>
> I believe that I have been discriminated against because of my race, Pakistani, and my religion, Muslim, in violation of Title VII of the Civil Rights Act of 1964, as amended.

[10, at 2] (emphasis added). Defendant's summary judgment motion apparently leaned heavily on the fact that Plaintiff checked only certain boxes on the EEOC charge, but there was no place

on the form to indicate discriminatory discharge. The form contains bases of discrimination (*e.g.*, race), not methods of discrimination.

The Court need not reiterate its extensive discussion of the legal standards pertinent to the exhaustion analysis. However, the Court does emphasize the Seventh Circuit's admonitions that (i) the exhaustion analysis is fact-specific (see, *e.g.*, *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 n.2 (7th Cir. 2004) (agreeing with the district court's evaluation of evidence extrinsic to the EEOC charge)), (ii) district court judges should engage in thorough analysis (*Babrocky*, 773 F.2d at 864), and (iii) the exhaustion standard is liberal for employees, who are not held to the same standards as lawyers (*Jenkins v. Blue Cross Mut. Hosp. Ins. Co.*, 538 F.2d 164, 167 (7th Cir. 1976) ("we have recognized that EEOC charges are in layman's language")). Indeed, the Seventh Circuit has noted that even a handful of words might be enough to exhaust administrative remedies. *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 820 (7th Cir. 2005) (plaintiff's claim was unexhausted but a different outcome would have obtained "by adding just a few words"). The inquiry centers on what sort of investigation likely would have grown from the EEOC charge. *Ajayi v. Aramark Bus. Svcs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003).

Several cases illustrate the liberal standards involved. For example, in the oft-cited *Jenkins* case, the plaintiff's EEOC charge focused primarily on discrimination based on the plaintiff's race. However, the charge also stated that her boss "accused [her] of being the leader of the girls on the floor." *Jenkins*, 538 F.2d at 167. That was sufficient to allege sex discrimination in a subsequent lawsuit, even though the plaintiff did not check the box on the form for discrimination based on sex. *Id.* at 169. Similarly, in *Kristufek v. Hussmann Foodservice Co., Toastmaster Div.*, 985 F.2d 364 (7th Cir. 1993), the Seventh Circuit held that a plaintiff exhausted administrative remedies with respect to a retaliation theory even though the

10

plaintiff did not mention retaliation in the charge—it was sufficient that the retaliation charge was factually intertwined with the plaintiff's other charge and with the complaint of another employee. *Id.* at 368 (acknowledging that it was a close case but concluding that "the factual relationship of the age and discrimination charges of the parties is so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the [scope of the charge doctrine] would subvert the liberal remedial purposes of [Title VII].").

To be sure, there are many reported court of appeals cases upholding district court decisions that have dismissed claims in a complaint that went beyond the scope of the EEOC charge. That may occur when a plaintiff includes only vague allegations. See, *e.g.*, *McGoffney v. Vigo County Div. of Family & Children, Family and Social Svcs. Admin*, 389 F.3d 750, 752 (7th Cir. 2004) (vague allegations regarding "positions" and "jobs" denied to plaintiff); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1035 (7th Cir. 2004).[4] It also can happen where the conduct in the EEOC charge is inconsistent with the subsequently alleged theory. See, *e.g.*, *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994) (variance between type of conduct in EEOC charge and the complaint's counts).

The instant case is easily distinguishable from the sorts of cases in which the Seventh Circuit has concluded that a plaintiff failed to exhaust his or her administrative remedies. Plaintiff's EEOC charge lists several specific grievances—that Plaintiff's supervisor ratified sale stealing by Plaintiff's co-workers, that Plaintiff was called demeaning names by her supervisor,

---

[4] Although the *Hottenroth* Court upheld a district court's determination that a plaintiff had not exhausted her administrative remedies on a harassment theory, that case does not support Defendant here. Critically, the EEOC charge in *Hottenroth* included a handful of generalized grievances and stated that the plaintiff felt she had been "treated * * * differently." 388 F.3d at 1026. Here, Plaintiff lists the specifics of how she was treated, including repeated statements that she should find another job.

and that Plaintiff was excluded from company events. Critically, the EEOC charge also states that Plaintiff "was constantly told to find another job." The charge next states that she resigned her position. All of those allegations would logically lead the EEOC to investigate at least three theories: discrete acts of discrimination, harassment, and discriminatory discharge. And again, for the reasons set forth in the May 6 Order, the resignation does not alter the analysis. Moreover, the facts related to Plaintiff's discharge claim are the same facts as those that make up her harassment claim and her claims related to discrete acts of discrimination.

In neither the motion for summary judgment nor the motion for reconsideration does Defendant state what more Plaintiff should have said to put Defendant on notice. The Court's own reading of the EEOC charge is that nothing was missing. As Judge Bauer noted when he was a district court judge,

> [T]he Civil Rights Act is designed to protect those who are least able to protect themselves. Complainants to the EEOC are seldom lawyers. To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected.

*Willis v. Chicago Extruded Metals Co.*, 375 F. Supp. 362, 365 (C.D. Ill. 1974) (administrative remedies exhausted where plaintiff had stated to the EEOC the underlying "unfair thing" that happened to him).

Judge Bauer's reasoning should apply *a fortiori* in litigation based on "constructive" theories. After all, constructive means "not directly expressed, but inferred," *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 864 n.17 (7th Cir. 2002). To demand that a layperson put a fine point on a constructive discharge theory—rather than allege facts that stoke the interest of

12

those with legal training—is more than the Seventh Circuit demands and is inconsistent with the principles that animate the exhaustion inquiry in discrimination lawsuits.

Of course, it is worth reemphasizing that while substantive legal standards logically inform the analysis of what must be included in a charge in order properly to exhaust one's administrative remedies, the exhaustion inquiry is distinct from the merits of the underlying claim. The standards for prevailing on a constructive discharge claim impose a formidable barrier. See, *e.g.*, *Fischer v. Avanade, Inc.*, 519 F.3d 393 (7th Cir. 2008) (plaintiff can show either the "axe was about to fall" or that the work environment was even more unbearable than a harassment claim). The Court has concluded only that Plaintiff has exhausted her administrative remedies with respect to her discharge claim.

## VI. Conclusion

For the reasons set forth above, Defendant's motion for reconsideration [59] is denied.

Dated: November 13, 2009 _____
Robert M. Dow, Jr.
United States District Judge

13